## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHUGUANG CHEN, | Civil Action No.: 23-cv-1253 |
| c/o North River Law PLLC<br>1300 I St. NW, Suite 400E<br>Washington, DC 20005 | **COMPLAINT**<br><br>Jury Trial Demanded |
| Plaintiff, | |
| v. | |
| ICS PROTECTIVE SERVICES,<br>KEITH MOYLER,<br>DOE, | |
| 80 M Street SE, Suite 301-1<br>Washington, DC 20003 | |
| Defendants. | |

Plaintiff Shuguang Chen ("Chen" or "Plaintiff") brings this action based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, against ICS Protective Services ("ICS"), Keith Moyler ("Moyler") and Doe (together with ICS and Moyler, the "Defendants") as follows:

### NATURE OF THE ACTION

1.      This is a personal injury action arising from two assaults committed by employees of ICS against Plaintiff.

2.      The first assault occurred on May 4, 2022, by Doe, an unidentified employee of ICS. As video evidence shows, Plaintiff was exercising his First Amendment rights, on American soil, by peacefully protesting judicial corruption in the People's Republic of China ("PRC") when Doe, who was unprovoked, menacingly flashed a bright light into Plaintiff's eyes, struck him with his palm, and threatened to kill him.

3.     The second assault occurred on June 25, 2022.  Again, video evidence shows that Plaintiff was peacefully protesting when he was violently and unlawfully arrested by Moyler, also an employee of ICS. As a result of Moyler's false arrest, Plaintiff sustained multiple injuries and was detained by police for almost 45 hours.

4.     For these incidents of unconscionably tortious conduct, Plaintiff seeks compensatory and punitive damages against each of the Defendants in an amount exceeding $75,000, exclusive of interest and costs.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because it is an action between residents of different States and the amount in controversy exceeds $75,000.

6.     Venue is proper in the District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(b)-(d) because Defendants reside in the District of Columbia and a substantial part of the unlawful conduct occurred in the District of Columbia.

## PARTIES

### A.     Plaintiff

7.     Plaintiff Chen Shuguang, born May 9, 1964, is a lawful permanent resident of the United States, a resident of Virginia, and a citizen of the PRC. As further detailed below, Chen is former businessman turned activist who has dedicated his life to protesting judicial corruption in the PRC.

### B.     Defendants

8.     ICS is a private security company. Its principal place of business is in Washington, DC. ICS is also incorporated in Washington, DC. ICS has been engaged by the Embassy of the PRC ("PRC Embassy") since 2003 to provide private security to the PRC Embassy, the PRC's

ambassador and their residence, as well as visiting Chinese politicians, including for Xi Jinping, during state visits to Washington, DC.

9.     Another entity with the business name "ICS Protective Services Inc." was incorporated in Maryland on July 7, 2021. Its principals appear to be the same principals of the DC incorporated ICS. Given uncertainty regarding ICS' corporate structure, both the Maryland and DC entity are named as defendants in this action and the term ICS shall refer to both entities.

10.     At all times relevant herein, ICS employed Moyler and Doe, and is responsible for the tortious acts or omissions of its employees within the scope of their employment.

11.     Doe is an unidentified employee of ICS. At all relevant times herein, Doe was employed by ICS. His picture is reproduced here:



12.     Moyler is a Special Police Officer ("SPO"). At all relevant times herein, Moyler was employed by ICS.

## STATEMENT OF FACTS

13.     Plaintiff was a successful entrepreneur in the PRC. He once owned and managed a factory that produced stereo equipment in Guangdong.

14.     In 1995, Plaintiff's life changed course when he, his family and his friends loaned 5.6 million RMB (approx. $812,000 USD) to a business acquaintance, Guqiang Huang. Huang used the money to invest in a real estate development in Guangzhou. When Huang failed to repay the loan, Plaintiff filed a lawsuit in 1997 in the Haizhu District People's Court of Guangzhou City to recover his loan.

15.     During the lawsuit, Huang's main real estate assets were frozen pursuant to a court ruling pending the outcome of the lawsuit. Plaintiff ultimately prevailed in the dispute. But Huang's properties were inexplicably sold to third parties without judicial authorization and the proceeds of the sale were never distributed to rightful creditors, including Plaintiff.  Meanwhile, the enforcement judge[1] from the Haizhu District People's Court not only did not pursue the escrow-like entity responsible for the unauthorized disposal of Huang's properties, but the judge also took actions to shield it from liability.

16.     Based on his belief that the judge and the escrow-like entity abused their powers and on his suspicions that they pocketed the money from the sale for their own benefit, Plaintiff appealed to various levels of courts in the PRC to review the executor's conduct. He also filed several complaints to government bodies and disciplinary boards. But instead of providing Plaintiff any assistance, the courts and government bodies refused to hold anyone responsible. All told,

---

[1] An enforcement judge in the PRC is a judge who is responsible for enforcing civil judgments and orders issued by the courts. Enforcement judges have the power to take measures such as ordering assets to be seized or frozen, imposing fines, and detaining parties who fail to comply with the court's decisions.

Plaintiff ultimately spent over 20 years in China trying to seek redress and enforce the judgement of the Haizhu court to no avail.

17.    During this saga, Plaintiff immigrated to the United States in 2011, and he obtained permanent residency shortly thereafter. Even after immigrating to the United States, Plaintiff continued advocating for his case. He regularly traveled from the United States to the PRC and tried petitioning for a review of the mishandling of his case. In other words, he became what in the PRC is known as a "petitioner," that is, someone who petitions the government, usually the central government, for redress of grievances, usually against local authorities.

18.    Eventually, Plaintiff exhausted all advocacy and judicial avenues within the PRC. The last time he travelled there was in March 2018. Plaintiff then shifted his efforts on advocating directly to the PRC government in the United States. After dedicating so many years to fighting for his case, Plaintiff realized he was not just unlucky. He was one of countless victims of a corrupt judicial system. And he was determined to bring attention to the corruption that destroyed the lives of so many of his fellow citizens.

19.    In December 2019, Plaintiff moved into a tent that was erected across from the PRC Embassy located at 3505 International Place NW, Washington DC, 20008 and began longstanding live-in and peaceful protest to bring attention to judicial corruption in the PRC.

20.    When his tent forcibly and abruptly dismantled in October 2021, Plaintiff continued to protest on the sidewalk adjacent to the PRC's ambassador's residence at 2301 S Street NW, Washington, DC, 20008, as was his right under international and domestic law. At the time, the ambassador was Qin Gang, who is now the PRC's foreign minister. In addition to trying to obtain redress for injustice he suffered, he also called on the ambassador to live up to various promises made by the ambassador to PRC citizens.

21.    To ensure his message was heard by the ambassador, Plaintiff often used a bullhorn to broadcast his grievances. Indeed, it was Plaintiff's intention to do all that he was permitted to within the law to get his message across to the ambassador. This was because Plaintiff believed that was the only way he could move the ambassador to pay attention to his plight, and because he believed that a privileged ambassador should hear from the aggrieved citizens of the country he served.

22.    During his protests, Plaintiff regularly saw and occasionally interacted with various ICS employees who provided 24/7 private security for the PRC Embassy, Ambassador Qin Gang, and his residence. As ICS employees were required to stand guard outside of the PRC Embassy and the ambassador's residence, they also got to know Plaintiff by observing him protest for years.

23.    In fact, ICS employees frequently observed other individuals and human rights groups protest at the PRC Embassy and the ambassador's residence. Many victims of human rights abuse and judicial corruption in the PRC, like Plaintiff, resorted to protesting after enduring incredible injustices and violations in the PRC.

24.    As for Plaintiff, ICS employees knew that he was a fearless but also harmless non-violent protestor. And though they occasionally engaged in disagreements about where Plaintiff could stand, interactions between Plaintiff and ICS were never violent until May 4, 2022.

25.    On May 4, 2022, Plaintiff was peacefully protesting outside of the ambassador's residence. Towards the end of the day, at approximately 9:30pm, Doe inexplicably and abruptly turned violent on Plaintiff. Despite standing on the sidewalk as he was required to, Doe suddenly approached Plaintiff and aggressively shined his flashlight into Plaintiff's eyes. Doe moved closer and closer to Plaintiff while continuing to point his flashlight at Plaintiff's eyes. Doe then struck Plaintiff on his chest and threatened to kill Plaintiff him. All this was recorded with a cellphone

that Plaintiff was holding and the video shows Doe pointing the flashlight at Plaintiff while saying:

"Touch me mother fucker! Don't touch me, bitch. I will fucking kill you!"

26.    Below is an image of Doe using his flashlight on Plaintiff.



27.    For several weeks after Doe's assault, Plaintiff experienced fatigue, headaches, irritated eyes, and sensitivity to light. He also felt fear and emotional distress from the unprovoked attack that suppressed his right to protest. But he did not want to let that fear stop him from continuing to exercise those rights. So Plaintiff started wearing a bodycam as a way of protecting himself.

28.    On June 25, 2022, Plaintiff was protesting while wearing his bodycam on the sidewalk near the ambassador's residence. He saw that Ambassador Qin Gang was playing tennis outside. Plaintiff stood on the sidewalk and aimed his bullhorn towards the court. Suddenly, a woman appeared next to him. This person was Minister Xu Xueyuan, a high-ranking member of the PRC diplomatic mission. Xu grabbed and threw his cellphone, which was also recording at the

time, onto the middle of the road. Below is an image from Plaintiff's bodycam of Xu reaching for

Plaintiff's cellphone, which he was holding above his head.



29.     Plaintiff ran into the street to pick up his cellphone. Meanwhile, Moyler was watching from the sidewalk. He then approached and observed Plaintiff pick up his cellphone from the road. Below is an image from Plaintiff's bodycam of Moyler standing over him as he picked up his cellphone from the middle of the road.



30.     Moyler exchanged a few words with Xu and proceeded to unlawfully arrest Plaintiff for assaulting Xu. Below is an image from Plaintiff's bodycam of Moyler conferring with Xu before arresting him.



31.     Moyler caused Plaintiff to trip and the right side of his head, shoulder, elbow, and pelvis hit the ground. Moyler then forcefully contorted Plaintiff's arms behind his back and succeeded in subduing Plaintiff on the ground.

32.     Moyler then called USSS to the scene. While waiting for USSS to arrive, Moyler sat on Plaintiff's torso for nearly ten minutes, periodically striking at his ribs and shoulder, all while Plaintiff was lying face down on the ground with his hand forced behind his back. During this time, Moyler also put handcuffs on Plaintiff.

33.     When USSS arrived on the scene, USSS took custody of Plaintiff in handcuffs. Moyler and Xu proceeded to provide false statements to USSS, claiming that Plaintiff assaulted them both. Moyler also provided USSS with a false written statement, in which he wrote that the

reason he initiated Plaintiff's arrest was because he witnessed Plaintiff grab Xu's hand and snatch her phone, while moving aggressively towards Xu. In his statement, Moyler also falsely claimed that Plaintiff continued actively resisting arrest after Plaintiff was already subdued and forced onto the ground.

34.    As a result of Moyler's force, Plaintiff had bruising, scrapes and lacerations throughout his body, including on his head, his elbow, his shoulder, and his wrists where he was handcuffed. These contusions and bruises persisted for weeks after his arrest.

35.    Plaintiff was charged with assault on a police officer, simple assault (on Xu), and resisting arrest. He was detained at the DC Central Detention Facility for approximately 45 hours. The following are images of Plaintiff's injuries shortly after he was released from detention.





















36.    Plaintiff was wrongfully criminally prosecuted for these offences by the U.S. Department of Justice until the charges against him were finally dropped on August 2, 2022.

37.    The experience of being unlawfully arrested and assaulted by Moyler in front of Xu, and then wrongfully prosecuted for offenses he did not commit was humiliating and traumatizing. And the pain from the physical injuries he sustained persists to this day.

38.    For these two incidents of unconscionably tortious conduct by Doe and Moyler that repressed Plaintiff's First Amendment rights to protest, Plaintiff endured extreme physical and psychological suffering.

### FIRST CLAIM FOR RELIEF
**Assault**
**Against Doe, Moyler and ICS**

39.    Plaintiff re-alleges and incorporates all the allegations of this complaint with the same force and effect as if fully restated herein.

16

40.    At all times relevant herein, ICS acted through its employees, including Defendant Doe and Defendant Moyler, who were acting within the scope of their employment.

41.    Defendants acted intentionally to cause harmful and offensive contact to Plaintiff.

42.    Defendants caused Plaintiff to imminently fear or apprehend such harmful, offensive and unlawful contact.

43.    Defendants acted with the intent to threaten and harm, and did threaten and harm Plaintiff.

44.    In doing all this, Defendants were motivated by a desire to repress Plaintiff's right to free speech and expression in the United States.

45.    Plaintiff did not consent to such conduct, which caused physical, mental, and emotional injury, damage, loss, and harm to Plaintiff.

46.    As a result of the foregoing, Plaintiff demands judgment for this count against each of the Defendants in an amount exceeding $75,000, which is to include compensatory and punitive damages, as well as attorneys' fees and costs and pre-judgment interest.

### SECOND CLAIM FOR RELIEF
**Battery**
**Against Doe, Moyler, and ICS**

47.    Plaintiff re-alleges and incorporates all the allegations of this complaint with the same force and effect as if fully restated herein.

48.    At all times relevant herein, ICS acted through its employees, including Doe and Defendant, who were acting within the scope of their employment.

49.    Defendants acted intentionally to cause harmful and offensive contact to Plaintiff, including by flashing a bright light into Plaintiff's eyes, *e.g.*, *Eichenwald v. Rivello*, 318 F. Supp. 3d 766, 775 (D. Md. 2018) ("[I]f a person used a laser to intentionally blind another, or a sonic

weapon to intentionally cause permanent hearing loss," that would constitute "a battery, even though the contact at issue was 'only' a beam of light or a sound wave."), by striking Plaintiff, and by forcefully and unlawfully arresting Plaintiff.

50.    In doing all this, Defendants were motivated by a desire to repress Plaintiff's right to free speech and expression in the United States.

51.    Plaintiff did not consent to such physical contact, which caused physical, mental, and emotional injury, damage, loss, and harm to Plaintiff.

52.    As a result of the foregoing, Plaintiff demands judgment for this count against each of the Defendants in an amount exceeding $75,000, which is to include compensatory and punitive damages, as well as attorneys' fees and costs and pre-judgment interest.

### THIRD CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### Against Doe, Moyler, and ICS

53.    Plaintiff re-alleges and incorporates all the allegations of this complaint with the same force and effect as if fully restated herein.

54.    At all times relevant herein, ICS acted through its employees, including Doe and Moyler, who were acting within the scope of their employment.

55.    Defendants recklessly or intentionally caused severe emotional distress to Plaintiff by their willful, wanton, extreme, and outrageous conduct, including but not limited to shining a bright light directly into Plaintiff's eyes, striking Plaintiff, threatening to kill Plaintiff, violently arresting Plaintiff without probable cause, and providing false statements to USSS resulting in Plaintiff being criminally charged, all because Plaintiff was exercising his rights to free speech and expression on U.S. soil.

56.     Defendants' conducts were so outrageous in character and so extreme in degree that a reasonable member of the community would regard such conduct as atrocious, going beyond all possible bounds of decency and as being utterly intolerable in a civilized community.

57.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered pain, severe emotional distress, and mental anguish.

58.     As a result of the foregoing, Plaintiff demands judgment for this count against each of the Defendants in an amount exceeding $75,000, which is to include compensatory and punitive damages, as well as attorneys' fees and costs and pre-judgment interest.

### FOURTH CLAIM FOR RELIEF
### Civil Claim for Prejudice-Motivated Injury under D.C. Code § 22-3704
### Against Doe, Moyler, and ICS

59.     Plaintiff re-alleges and incorporates all the allegations of this complaint with the same force and effect as if fully restated herein.

60.     At all times relevant herein, ICS acted through its employees, Doe and Moyler, who were acting within the scope of their employment.

61.     Defendants injured Plaintiff as a result of their prejudice against Plaintiff's actual or perceived political affiliation.

62.     As a direct and proximate result of this conduct, Plaintiff suffered physical, mental, and emotional injury, damage, loss, and harm.

63.     As a result of the foregoing, Plaintiff demands judgment for this count against each of the Defendants in an amount exceeding $75,000, which is to include compensatory and punitive damages, as well as attorneys' fees and costs and pre-judgment interest.

**FIFTH CLAIM FOR RELIEF**
**False Arrest/False Imprisonment**
**Against Moyler and ICS**

64.    Plaintiff re-alleges and incorporates all the allegations of this complaint with the same force and effect as if fully restated herein.

65.    At all times relevant herein, ICS acted through its employee, Moyler, who was acting within the scope of his employment.

66.    Defendants caused the false arrest and imprisonment of Plaintiff when Moyler tripped Plaintiff, forced him onto the ground, sat on his back, handcuffed him, and deprived him of the ability to move freely, all without probable cause. Even if Moyler did have probable cause, he did not have jurisdiction to arrest Plaintiff.

67.    Moyler is a SPO. A SPO has the same powers as a law enforcement officer to arrest without warrant for offenses committed within premises to which his jurisdiction extends. D.C. Code § 23–582. Defendant Moyler's jurisdiction did not extend to the public sidewalk where Moyler arrested Plaintiff. SPOs have no authority in public spaces unless they are in the fresh pursuit of an individual committing a misdemeanor or felony in his presence. Plaintiff did not commit a misdemeanor or felony in Moyler's presence.

68.    The arrest of Plaintiff, which was in the absence of probable cause, on public property, and in retaliation of his exercise of free speech, constituted a false arrest. As a direct and proximate result of this arrest, Plaintiff suffered physical, mental, and emotional injury, damage, loss, and harm.

69.    As a result of the foregoing, Plaintiff demands judgment for this count against Moyler and ICS in an amount exceeding $75,000, which is to include compensatory and punitive damages, as well as attorneys' fees and costs and pre-judgment interest.

## SIXTH CLAIM FOR RELIEF
### Malicious Prosecution
### Against Moyler and ICS

70.    Plaintiff re-alleges and incorporates all the allegations of this complaint with the same force and effect as if fully restated herein.

71.    At all times relevant herein, ICS acted through its employee, Moyler, who was acting within the scope of his employment.

72.    Defendants caused Plaintiff to be maliciously prosecuted when Moyler knowingly and intentionally gave patently false testimony about Plaintiff to USSS, resulting in Plaintiff's arrest and criminal prosecution. The criminal prosecution of Plaintiff terminated in Plaintiff's favor.

73.    Moyler acted with malice in giving false testimony to USSS. Moyler's intention was to suppress Plaintiff's right to free speech and expression in the United States and to stop him from continuing to protest.

74.    As a direct and proximate result of the malicious prosecution, Plaintiff suffered physical, mental, and emotional injury, damage, loss, and harm.

75.    As a result of the foregoing, Plaintiff demands judgment for this count against Moyler and ICS in an amount exceeding $75,000, which is to include compensatory and punitive damages, as well as attorneys' fees and costs and pre-judgment interest.

## SEVENTH CLAIM FOR RELIEF
### Civil Conspiracy
### Against Moyler and ICS

76.    Plaintiff re-alleges and incorporates all the allegations of this complaint with the same force and effect as if fully restated herein.

77.    At all times relevant herein, ICS acted through its employee, Moyler, who was acting within the scope of his employment.

78.    Defendants conspired with Xu to assault, batter, intentionally inflict emotional distress upon, falsely arrest, and cause prejudice-motivated injury to Plaintiff. Defendants also conspired with Xu to maliciously prosecute Plaintiff.

79.    Overt acts in furtherance of the conspiracy include conferring with Xu about arresting Plaintiff and acting in concert with Xu to provide false testimony to USSS regarding Plaintiff to have him wrongfully arrested by USSS.

80.    As a direct and proximate result of the conspiracy, Plaintiff was arrested and charged with assault on a police officer, simple assault and resisting arrest, and Plaintiff suffered physical, mental, and emotional injury, damage, loss, and harm.

81.    As a result of the foregoing, Plaintiff demands judgment for this count against Moyler and ICS in an amount exceeding $75,000, which is to include compensatory and punitive damages, as well as attorneys' fees and costs and pre-judgment interest.

**EIGHTH CLAIM FOR RELIEF**
**Negligent training and supervision**
**Against ICS**

82.    Plaintiff re-alleges and incorporates all the allegations of this complaint with the same force and effect as if fully restated herein.

83.    At all times relevant herein, ICS employed Doe and Moyler.

84.    ICS failed to properly train and supervise Doe and Moyler. ICS knew or should have known that ICS employees assigned to work at the PRC's ambassador's residence were going to encounter protestors, and that the failure to provide proper training and supervision to those employees, including Doe and Moyler, could result in injury to such protestors.

85.    ICS failed to provide adequate training on such protestors' constitutional rights to free speech and expression in the United States.

86.     After the May 4th, 2022, incident, ICS had direct knowledge that its employees engaged in violent confrontations with protesters and took no actions to improve their training and supervision procedures to prevent further violence by its employees.

87.     ICS also failed to provide Moyler adequate training on his authority and jurisdiction to make arrests as a SPO.

88.     As a direct and proximate result of ICS' failure to train and supervise its employees, including Doe and Moyler, Plaintiff suffered physical, mental, and emotional injury, damage, loss, and harm.

89.     As a result of the foregoing, Plaintiff demands judgment for this count against ICS in an amount exceeding $75,000, which is to include compensatory and punitive damages, as well as attorneys' fees and costs and pre-judgment interest.

## PRAYER FOR RELIEF

Plaintiff hereby demands:

A.     Damages in an amount exceeding $75,000, which is to include compensatory and punitive damages;

B.     Pre-judgment interest;

C.     Plaintiff's attorneys' fees and costs; and

D.     Such other and further relief, including any additional equitable relief, as the Court may deem just and proper.

Plaintiff demands a trial by jury.

Dated: May 3, 2023                    By: *Times Wang*_____
                                      **NORTH RIVER LAW PLLC**
                                      Times Wang (D.C. Bar 1025389)
                                      1300 I St. NW, Suite 400E
                                      Washington, DC 20005
                                      (202) 838-6489
                                      twang@northriverlaw.com

*Counsel for Plaintiff*