UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHUGUANG CHEN,

   *Plaintiff*,

v.

ICS PROTECTIVE SERVICES, *et al.*,

   *Defendants*.

No. 23-cv-01253 (DLF)

## MEMORANDUM OPINION

  Shuguang Chen brings this action against ICS Protective Services ("ICS"), Keith Moyler, and a John Doe defendant[1] for injuries he sustained protesting outside of the Chinese Embassy. Before the Court is the defendants' Partial Motion to Dismiss. Dkt. 13. For the reasons that follow, the Court will grant in part and deny in part the motion.

### I. BACKGROUND[2]

  Chen is a citizen of the People's Republic of China ("PRC") and a lawful permanent resident of the United States. Compl. ¶ 7, Dkt. 1. His relationship with the Chinese government soured after he brought a lawsuit in 1997 to recover approximately $812,000 USD lost in a loan that Chen extended to a business acquaintance. *Id.* ¶ 14. Despite prevailing in his lawsuit in China,

---

[1] Although the defendants have identified the John Doe as Matthew Mitroine, *see* Opp'n at 1 n.1, Dkt. 19, Chen has not properly served Mitrione or substituted him as a party to this action. Accordingly, the Court does not consider Mitroine a properly named defendant for purposes of the motion to dismiss, and it will treat the allegations in the complaint as directed toward a John Doe defendant.

[2] For purposes of this motion to dismiss, the Court accepts as true all material factual allegations in the complaint. *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). At this stage of the proceedings, the Court will not accept the defendants' invitation to consider facts not alleged in the complaint, *see, e.g.*, Opp'n at 13.

Chen alleges that he never recovered his financial assets and Chinese judicial officials instead "pocketed the money." *Id.* ¶ 16. He spent over 20 years seeking redress from the Chinese court system and other governmental bodies. *Id.* Because he has "dedicated his life to protesting judicial corruption," Chen asserts that he "became what in the PRC is known as a 'petitioner,' that is, someone who petitions the [Chinese] government . . . for redress of grievances." *Id.* ¶¶ 7, 17.

In 2011, Chen immigrated to the United States. *Id.* ¶ 17. From 2019 to 2021, he engaged in a "live-in and peaceful protest" in a tent erected across the street from the Chinese Embassy in the District of Columbia. He regularly protests "on the sidewalk adjacent to" the Embassy, including by using "a bullhorn to broadcast his grievances." *Id.* ¶¶ 20–21.

ICS is a security company that provides "24/7 private security" for the Chinese Embassy and its staff. *Id.* ¶¶ 8, 22. ICS has served the Embassy since 2003. *Id.* ¶ 8. ICS guards "frequently observe[]" "victims of [Chinese] human rights abuse and judicial corruption" protest in front of the Embassy. *Id.* Chen alleges that ICS guards "got to know him by observing him protest for years" and "knew that he was a fearless but also harmless non-violent protestor." *Id.* ¶¶ 22, 24.

This suit arises from altercations between Chen and ICS guards that occurred on May 4, and June 25, 2022. According to Chen, on May 4, when he was "peacefully protesting outside of the ambassador's residence," John Doe, an ICS security guard, "inexplicably and abruptly turned violent" on Chen. *Id.* ¶ 25. Chen alleges that Doe "suddenly approached him and aggressively shined his flashlight into his eyes." *Id.* Doe allegedly then, without provocation, "struck [Chen] on his chest and threatened to kill [Chen]." *Id.* Chen asserts that Doe stated, "Touch me mother fucker! Don't touch me, bitch. I will fucking kill you." *Id.* Chen recorded the interaction on his cell phone, and the complaint includes a screenshot of Doe standing and pointing his flashlight at Chen's eye level. *Id.* ¶ 25. For several weeks after the interaction, Chen allegedly experienced

"fatigue, headaches, irritated eyes, and sensitivity to light," as well as "fear and emotional distress." *Id.* ¶ 25.

On June 25, Chen had another altercation with ICS guard Keith Moyler while he was protesting with his bullhorn "on the sidewalk near the ambassador's residence." *Id.* ¶ 28. That day, Chen was fitted with a bodycam and a cell phone. *Id.* As he watched then-Chinese Ambassador Qin Gang play tennis outside, he aimed his bullhorn at the court. Suddenly, Minister Xu Xueyan—a female "high-ranking member" the Chinese diplomatic mission—approached him. *Id.* A screenshot from his bodycam video shows Minister Xu with her arms outstretched toward his cell phone, which he was holding above his head. *Id.* Minister Xu then allegedly "grabbed and threw [his] cell phone . . . onto the middle of the road" while Moyler watched the interaction between Chen and Minister Xu from the sidewalk. *Id.* ¶ 28. Chen then "ran into the street to pick up his cell phone." *Id.* ¶ 29. Another screenshot from his bodycam shows Moyler standing over him as he bent down to retrieve his cell phone in the middle of the road. *Id.* ¶ 29. Moyler then returned to the sidewalk to "exchange[] a few words with Xu." *Id.* ¶ 30.

After "conferring" with Minister Xu, Moyler proceeded to arrest Chen. *Id.* According to Chen, Moyler "caused him to trip and the right side of his head, shoulder, elbow, and pelvis hit the ground." *Id.* ¶ 31. Moyler then "forcefully contorted [Chen's] arms behind his back and succeeded in subduing [him] to the ground." *Id.* After calling U.S. Secret Service officers to the scene, Moyler allegedly sat on Chen's torso for "nearly ten minutes, periodically striking at his ribs and shoulder" while he was "lying face down on the ground with his hand forced behind his back." *Id.* Moyler also handcuffed him during the waiting period. *Id.* Upon the arrival of Secret Service, Moyler allegedly provided false statements to the officers, claiming that Chen "assaulted . . . both [Minister Xu and Moyler]." *Id.* ¶ 33. Moyler also provided a written statement, which stated that

he had arrested Chen because "he witnessed [Chen] grab Xu's hand and snatch her phone, while moving aggressively towards Xu." Chen alleges that, in reality, Minister Xu was the aggressor who grabbed his phone. *Id.* According to Chen, Moyler's statement also included the false assertion that Chen "continued actively resisting arrest" after he "was already subdued and forced to the ground." *Id.* Chen was arrested and detained at the D.C. Central Detention Facility for almost two days. *Id.* ¶ 35.

Chen's complaint includes photographs of physical injuries that he sustained in the altercation with Moyler. The photographs, taken after his release from detention approximately 45 hours after the incident, show a quarter-sized scab on his knee, a quarter-sized scab surrounded by scrapes on his inner elbow, two fingernail-sized scabs on his upper temple and cheekbone, a light pink thumb-sized bruise on his wrist, and multiple hairline scrapes on his shoulder, upper forearm, and armpit. *Id.* ¶ 35. Chen alleges that these injuries "persisted for weeks" after his arrest and that the "pain from the physical injuries he sustained persists to this day." *Id.* ¶¶ 34, 37.

Chen was charged and prosecuted by the U.S. Department of Justice for assault on a police officer, simple assault on Minister Xu, and resisting arrest. *Id.* ¶¶ 35–36. But the charges were later dropped. *Id.* ¶ 36. Chen alleges that the experience of being arrested and assaulted by Moyer, and of being "wrongfully prosecuted for offenses he did not commit[,] was humiliating and traumatizing." *Id.* ¶ 37.

On May 3, 2023, Chen filed suit against the defendants alleging eight counts: assault, battery, intentional infliction of emotion distress ("IIED"), prejudice-motivated injury under D.C. Code § 22-3704, false arrest and false imprisonment, malicious prosecution, civil conspiracy, and negligent training and supervision. The defendants move to dismiss all but the assault and battery counts for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6); Mot. to Dismiss at 1.

## II.     LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," *Iqbal*, 556 U.S. at 678, but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility," *id.* (internal quotation marks omitted).

When deciding a Rule 12(b)(6) motion, well-pleaded factual allegations are "entitled to [an] assumption of truth," *id*. at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). But the Court need not accept "a legal conclusion couched as a factual allegation" nor an inference unsupported by the facts alleged in the pleadings. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

### III. DISCUSSION

For the reasons that follow, the Court will grant the defendants' motion to dismiss the plaintiff's claims for intentional infliction of emotional distress, prejudice-motivated injury under D.C. Code § 22-3704, malicious prosecution, and negligent supervision and training. The Court will deny their motion with respect to the false arrest/false imprisonment and civil conspiracy claims.

#### A. Intentional Infliction of Emotional Distress

To state a claim for IIED, "a plaintiff must [allege] (1) extreme and outrageous conduct by the defendant that (2) intentionally or recklessly (3) caused the plaintiff severe emotional distress." *Robertson v. D.C.*, 269 A.3d 1022, 1033 (D.C. 2022). "This common law claim has been described as 'a very narrow tort with requirements that are rigorous, and difficult to satisfy.'" *Hargraves v. D.C.*, 134 F. Supp. 3d 68, 93 (D.D.C. 2015) (quoting *Snyder v. Phelps*, 562 U.S. 443, 464–65 (2011)). "Where reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 995 (D.C. Cir. 2014) (citation omitted).

Chen fails to plead facts sufficient to satisfy the first element of an IIED claim—that the defendants' conduct was sufficiently "extreme" and "outrageous." *Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1459 (D.C. Cir. 1990).  This element requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kotsch v. D.C.*, 924 A.2d 1040, 1945–46 (D.C. 2007) (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)); *see Abourezk*, 895 F.2d at 1459 (same standard).  A court considers "applicable community standards, the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place."  *Duncan v. Children's Nat. Med. Ctr.*, 702 A.2d 207, 211 (D.D.C. 1997).  Chen's claim relies on Doe's pointing of a flashlight in his eyes while Doe threatened him; Moyler's unlawful and forceful arrest, "periodically striking at his ribs and shoulder," and Moyler's false statements to law enforcement resulting in his prosecution.  Compl. ¶¶ 25, 31–33.  Although these allegations are sufficient to support claims for assault, battery, and false arrest, *see infra*, they do not satisfy the elements of an IIED claim.  To the contrary, the ICS guards' alleged uses of force fall well within the realm that courts have found insufficiently extreme and outrageous.  *See Hargraves*, 134 F. Supp. 3d at 94 (officers' use of a baton to force plaintiff to ground not extreme and outrageous); *Smith v. D.C.*, 882 A.2d 778, 790–91 (D.C. 2005) (IIED claim rejected where an officer, intervening in a fight, "applied a chokehold to [plaintiff's] throat" after watching him spit blood with a broken jaw); *Harris v. District of Columbia*, 696 F.Supp.2d 123, 137 (D.D.C. 2010) (dismissing IIED claim where plaintiff alleged twelve officers used excessive force and unlawfully arrested him with guns drawn).  Likewise, Chen's assertions that Moyler provided false statements to the Secret Service leading to his arrest cannot sustain his claim.  *See Harris*, 696 F.Supp.2d at 137–38 (dismissing IIED claim where officer "intentionally

lied" in an affidavit). Even viewed together, these allegations fall far short of the types of conduct found to support IIED claims. *See*, *e.g.*, *Daniels v. D.C.*, 894 F. Supp. 2d 61, 65, 68 (D.D.C. 2012) (denying motion to dismiss where officers "manhandle[d]," "pushed, shoved, and jerked" a 6-month pregnant plaintiff who stated she was willing to "go peacefully"); *Amons v. D.C.*, 231 F. Supp. 2d 109, 111 (D.D.C. 2002) (denying motion to dismiss where officers entered a plaintiff's home, killed his dog, and searched and detained him for twenty-two hours without legal justification).

Chen also has not shown that the defendants' conduct caused distress severe enough to satisfy the third element of an IIED claim. Severe emotional distress "requires more than "general distress, embarrassment, and unhappiness." *Bakeir v. Cap. City Mortg. Corp.*, 926 F. Supp. 2d 320, 341 (D.D.C. 2013); *see also Cooper v. District of Columbia*, 548 F. Supp. 3d 170, 184 (D.D.C. 2021) ("[E]mbarassment and difficulty do not approach the level required to support an IIED claim." (citation and internal quotation marks omitted)); *Garay v. Liriano*, 943 F. Supp. 2d 1, 23 (D.D.C. 2013) (same). "[M]erely suffering from mental anguish and stress is insufficient;" instead, the emotional distress must be "so acute that harmful physical consequences are likely to result." *Hargraves*, 134 F. Supp. 3d at 93–94 (quoting *Futrell v. Dep't of Lab. Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003)) (alterations adopted). Chen alleges that after the May 4 altercation with Doe, he felt "fear and emotional distress" as well as "fatigue, headaches, irritated eyes, and sensitivity to light." Compl. ¶ 27. He further asserts, in a conclusory manner, that his "humiliate[ion]" and "trauma[]" from the altercations resulted in "extreme physical and psychological suffering." *Id.* ¶ 37. But conclusory assertions of "emotional distress[ ] and mental anguish" cannot support an IIED claim. *Daniels*, 894 F. Supp. 2d at 68; *Wood v. Neuman*, 979 A.2d 64, 78 (D.C. 2009) (plaintiff who was "shaken at her arrest," "constantly crying and almost

sleepless," and "embarrassed at having been made out to be a 'pariah' in the neighborhood" did not show sufficient emotional distress).

Because Chen has failed to satisfy the first and the third elements of an IIED claim, the Court will grant the defendants' motion to dismiss the claim.

### B. Prejudice-Motivated Injury under D.C. Code § 22-3704

D.C. Code § 22-3704(a) provides a cause of action for "any person who incurs injury to his or her person . . . as a result of an intentional act that demonstrates an accused's prejudice based on the actual or perceived . . . political affiliation of a victim of the subject designated act." A "designated act" encompasses "any criminal act under District of Columbia law, including threats of bodily harm," and the criminal act may be a misdemeanor or felony. *Aboye v. U.S.*, 121 A.3d 1245, 1248–50 (D.C. 2015) (citing D.C. Code § 22-3701(2)). The plaintiff must be the victim of a "designated act" perpetrated by defendants. D.C. Code § 22-3704(a).

Chen's prejudice-motivated injury claim under D.C. Code § 22-3704 fails because his complaint is devoid of any factual allegations that the defendants acted out of prejudice against Chen's actual or perceived political affiliation—that is, his "petitioner" status and opposition to the government of the PRC, *see* Compl. ¶ 19. Even assuming that Chen is known as a "petitioner" in the PRC, he alleges no facts in support of his conclusory statement that the ISC guards "assaulted him based in part on their negative feelings about persons belonging to that group." Opp'n at 9. For example, he does not allege that Doe or Moyler made any statement expressing prejudice toward him or that either guard had any knowledge of Chen's political affiliation. Chen's conclusory allegations and his "formulaic recitation of the elements of" a D.C. Code § 22-3704 violation are insufficient to support a prejudice-motivated injury claim. *Iqbal*, 556 U.S. at 678. The Court will therefore grant the defendants' motion to dismiss the claim.

C.     **False Arrest and False Imprisonment**

To state a claim for false arrest or false imprisonment, a plaintiff must allege "(1) the detention or restraint of one against his will within boundaries fixed by the defendant, and (2) the unlawfulness of the restraint." *Edwards v. Okie Dokie, Inc.*, 473 F. Supp. 2d 31, 44 (D.D.C. 2007). "Depriving someone of the ability to freely move for any amount of time, either by real force or threat of force, is sufficient to bring a claim for false arrest or false imprisonment." *Lyles v. Micenko*, 468 F. Supp. 2d 68, 74 (D.D.C. 2006). An arrest is not unlawful if the arresting officer had probable cause, that is, "a reasonable basis to believe that a crime had been committed and the officer acted in good faith in making the arrest.'" *Edwards*, 473 F. Supp. 2d at 44; *Koroma v. U.S.*, 628 F. Supp. 949, 952 (D.D.C.1986); *Lyles*, 468 F. Supp. 2d at 74 ("[I]n civil cases the test is whether the officer had a reasonable good faith belief that the suspect has committed or is committing a crime, based on the fact and circumstances then known to him."). Under D.C. law, a special police officer such as a licensed privately-commissioned guard has "the same powers as a law enforcement officer to arrest without warrant for offenses committed within premises to which his jurisdiction extends, and may arrest outside the premises on fresh pursuit for offenses committed on the premises." D.C. Code § 23–582(a). "The issue of probable cause in a false arrest case is a mixed question of law and fact that the trial court should ordinarily leave to the jury." *Amobi*, 755 F.3d at 990 (quoting *Bradshaw v. D.C.*, 43 A.3d 318, 324 (D.C. 2012)).

Viewing the facts in the light most favorable to Chen, as the Court must, the complaint plausibly alleges that Moyler lacked probable cause to execute an arrest. According to Chen, he was "peacefully protesting" when Minister Xu accosted him and Moyler unlawfully arrested him. Compl. ¶ 3. He was allegedly standing on the sidewalk with a bullhorn when Minister Xu approached him to "repress" his "free speech," grabbed his cell phone, and threw it into the middle

of the road. *Id.* ¶ 44, 28. In Chen's telling, Moyler observed this sequence of events and arrested him without legal justification. *Id.* The defendants resist Chen's allegations and assert, relying on facts not alleged in the complaint, that Moyler had probable cause to arrest Chen. Reply Mot. at 4–5, Dkt. 20. At least at this stage of the proceedings, however, the Court must credit Chen's version of events, where Minister Xu was the unilateral aggressor who grabbed Chen's cell phone as Chen reacted "peacefully," *id.* ¶ 3, and Moyler acted without probable cause or a "reasonable basis to believe" that Chen had committed an assault, *id*. These allegations are sufficient to state a claim for false arrest and false imprisonment, *see Edwards*, 473 F. Supp. at 44, and thus the Court will deny the defendants' motion to dismiss the claim.

### D. Malicious Prosecution

To state a claim for malicious prosecution, a plaintiff must allege "(1) that the underlying suit terminated in the plaintiff's favor; (2) malice on the part of the defendant; (3) lack of probable cause for the underlying suit; and (4) special injury occasioned by plaintiff as the result of the original action." *Lyles*, 468 F. Supp. 2d at 75–76 (citing *Tyler v. Ctr. Charge Serv., Inc.*, 444 A.2d 965, 968 (D.C. 1982)). The claim may stand if a defendant "induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith" in support of a plaintiff's wrongful prosecution. *Moore v. Hartman*, 571 F.3d 62, 67 (D.C. Cir. 2009). As to the first element, "[a] favorable termination must 'reflect on the merits of the underlying action.'" *Singleton v. D.C.*, No. CV 21-1914 (RJL), 2022 WL 4235128, at *4 (D.D.C. Sept. 14, 2022) (quoting *Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. 1986)). Dismissal for a failure to prosecute may be a favorable termination "where the facts of the case indicate that such a disposition reflects on the innocence of the defendant in the underlying suit." *Carr*, 503 A.2d at 1245. But "[m]erely

alleging that criminal charges were dismissed is . . . insufficient to plead that the underlying case was favorably terminated." *Kenley v. D.C.*, 83 F. Supp. 3d at 42.

Chen has not pleaded facts sufficient to support his claim that the defendants caused him to be maliciously prosecuted after the June 25 altercation, Compl. ¶¶ 66–68. The complaint fails to allege a favorable termination because it contains only a brief statement that criminal "charges against [Chen] were finally dropped on August 2, 2022," Comp. ¶ 36. It does not assert the grounds for dismissal, nor does it offer reasons that "tend to indicate" Chen's innocence. *See Blakeney v. O'Donnell*, 117 F. Supp. 3d 6 (D.D.C. 2015). Chen argues for the first time in his opposition brief that "video of the altercation, which investigators had in their possession, showed that Plaintiff was innocent," Opp'n at 10, but he does not incorporate the video footage into his complaint, *see generally* Compl. Nor does he allege that the criminal proceedings were dismissed "with prejudice," as might support an inference of innocence. *See Singleton,* 2022 WL 4235128, at *4. He thus has failed to show that the underlying prosecution was terminated in his favor.

The cases on which Chen relies in which courts have inferred innocence from a "terse assertion" of dismissal are distinguishable. In *Blakeney*, 117 F. Supp. 3d at 20, and *Lucas v. D.C.*, 505 F.Supp.2d 122, 127 (D.D.C. 2007), courts permitted malicious prosecutions claims to survive a motion to dismiss where the plaintiffs made plain assertions that criminal charges were dropped. But, unlike here, those cases involved malicious prosecution claims against the state actor—the District of Columbia—that was also responsible for the *underlying* prosecution. *See, e.g.*, *Blakeney*, 117 F. Supp. 3d at 20 (explaining that the District's failure to "offer any facts regarding the circumstances of the underlying case's dismissal" weighed in favor of the plaintiffs). ICS, in contrast, is a private entity with no special insight into the U.S. Attorney's Office's rationale for terminating the prosecution against Chen. Thus, ICS's failure to provide the "facts of the case" of

the underlying prosecution is not enough to show that the prosecution was terminated in Chen's favor. The Court thus will dismiss the claim.

### E. Civil Conspiracy

The elements of civil conspiracy are "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) pursuant to, and in furtherance of, the common scheme." *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000) (citation omitted). A claim of civil conspiracy "depends on the performance of some underlying tortious act." *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983). "Advice or encouragement to act [that] operates as a moral support to a tortfeasor" may be a basis for liability if that encouragement "has the same effect upon the liability of the adviser as participation or physical assistance." *Halberstam*, 705 F.2d at 478 (citation omitted). "Proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement," *see id.* at 477, and allegations supported by circumstantial evidence can survive a motion to dismiss, *see Doe v. Roman Cath. Diocese of Greensburg*, 581 F. Supp. 3d 176, 212 (D.D.C. 2022).

Chen just barely alleges sufficient facts to support a claim that Moyler and Minister Xu agreed to commit at least one of the tortious acts alleged in the complaint. The complaint alleges that just before Moyler unlawfully arrested Xu, he observed Xu grab Chen's cell phone and throw it into the street and then "conferr[ed]" and "exchange[ed] a few words with Xu" on the sidewalk. *Id.* ¶ 30. The complaint also includes a screenshot of Moyler engaged in conversation with Xu. Comp. ¶ 30. Immediately after this exchange, Moyler arrested Chen by "caus[ing] him to trip and the right side of his head, shoulder, elbow, and pelvis to hit the ground." *Id.* ¶ 31. These facts are sufficient to state a claim for at least the underlying tortious acts of assault and battery. Moyler's

witnessing of Xu's alleged assault on Chen, followed by Moyler's conference with Xu and immediate false arrest of Chen, is circumstantial evidence that the two reached an agreement to commit an unlawful act against Chen.  *See Halberstam*, 705 F.2d 478, 480.  Because Chen has alleged the elements of a civil conspiracy claim, the Court will deny the defendant's motion to dismiss the claim.

### F. Negligent Training and Supervision

To state a claim for negligent training and supervision, a plaintiff must establish "that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise [or train] the employee."  *Spiller v. D.C.*, 302 F. Supp. 3d 240 (D.D.C. 2018) (quoting *Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985)).  An employer must have the "actual or constructive knowledge" of "problematic behavior on the part of the [employee] in question *before* the incident at issue."  *Id.* at 255 (emphasis added); *see also Rawlings v. D.C.*, 820 F.Supp.2d 92, 114–15 (D.D.C. 2011) (requiring evidence of the employee's negligent "behavior before" an incident giving rise to injury).

Chen fails to state a negligent training or supervision claim because he has not alleged that ICS had actual or constructive knowledge of previous problematic behavior by Doe or Moyler before the altercations giving rise to the suit.  Although Chen's burden at the motion-to-dismiss stage is "minimal," *Johnson v. D.C.*, No. CV 22-3167 (JEB), 2023 WL 2770392, at *7 (D.D.C. Apr. 4, 2023), and even "thin" factual allegations may survive, *James v. D.C.*, 869 F. Supp. 2d 119, 121 (D.D.C. 2012), Chen must make some "showing of prior dangerous or otherwise incompetent behavior" on the part of the defendants*, Johnson,* 2023 WL 2770392, at *7.  He has not done so.  The complaint does not allege that either Doe or Moyler have previously been

involved in any similar incident or "behaved in a dangerous or incompetent manner in the past." *Rawlings*, 820 F. Supp. 2d at 115 (citing *D.C. v. Tulin*, 994 A.2d 788, 794 (D.C. 2010)). Chen cannot rely on the altercation with *Doe* to establish that ICS had knowledge of prior misconduct by *Moyler*. *See* Opp'n at 13; *Johnson,* 2023 WL 2770392, at *7 (prior misconduct must be employee-specific). The Court also rejects Chen's contention, raised for the first time in his opposition brief, that it should take judicial notice of events underlying a separate suit and conclude that "ICS has long known that its employees have behaved dangerously towards petitioner-protestors against the PRC government." Opp'n at 13; *see Yang v. ICS Protective Servs.*, 2023 WL 5528386, at *1 (D.D.C. Aug. 28, 2023). Even if the Court were permitted to consider factual allegations raised outside the pleadings, Chen's "conclusory statement," *see Iqbal*, 556 U.S. at 678, does not raise a reasonable inference that ICS had knowledge of prior misconduct by either of the officers referenced in the complaint.

Accordingly, Chen has failed to state a claim for negligent training and supervision, and the Court will dismiss the claim.

## CONCLUSION

For these reasons, the Court grants the defendants' motion to dismiss, Dkt. 13, under Rule 12(b)(6) with respect to Count III (intentional infliction of emotional distress), Count IV (prejudice-motivated injury under D.C. Code § 22-3704), Count VI (malicious prosecution), and Count VIII (negligent supervision and training). Accordingly, Counts III, IV, VI, and VIII are dismissed without prejudice. The Court denies the motion with respect to Count V (false arrest and false imprisonment) and Count VII (civil conspiracy). A separate order consistent with this decision accompanies this memorandum opinion.

                                                                               _____
\
                                                                   DABNEY L. FRIEDRICH
\
September 5, 2024                                                  United States District Judge